UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NICHOLAS CAGGIANIELLO, NEIL HOWARD and THOMAS FALCO, on behalf of themselves and all other similarly situated employees of FSG PrivatAir, Inc.<br><br>PLAINTIFFS,<br>VS.<br><br>FSG PRIVATAIR, INC. and in their individual and official capacities DAVID C. HURLEY, HUGH F. REGAN, THOMAS H. MILLER and THOMAS L. CONNELLY<br><br>DEFENDANTS. | : CASE NO. 303CV1011(AWT)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: OCTOBER 27, 2005 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR SECOND RENEWED MOTION TO DISMISS**

I.  **PRELIMINARY STATEMENT**

Defendants FSG PrivatAir, Inc. ("PrivatAir"), David C. Hurley, Hugh F. Regan, Thomas H. Miller and Thomas L. Connelly, by their attorney, submit this memorandum of law in support of their Second Renewed Motion to Dismiss the above-entitled action pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 12 (b)(1) on the ground that the court does not have subject matter jurisdiction over the Fair Labor Standards Act ("FLSA") claims asserted by the Plaintiffs. Your Honor denied Defendants' original Motion to Dismiss at oral argument on October 9, 2004 and Renewed Motion to Dismiss on March 16, 2005 without prejudice. The Court ordered the parties to conduct discovery on subject matter jurisdiction in contemplation of the filing of this Second Renewed Motion to

**ORAL ARGUMENT REQUESTED**

Dismiss.

The Plaintiffs bring three claims against the Defendants under Section 7 (a) of the FLSA relating to their employment during the years 2000-2003. However, the Defendant, PrivatAir, is a Common Air Carrier and subject to Title II of the Railway Labor Act ("RLA") under 45 U.S.C. § 181. Therefore, the Defendants are exempt from the FLSA pursuant to 29 U.S.C. § 213(b) (3) because the Plaintiffs are employed by a Common Air Carrier.

## II. STANDARD FOR MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

In a motion to dismiss for lack of subject matter jurisdiction under F.R.C.P 12(b)(1), the defendant is permitted to contest the legal and factual sufficiency of the plaintiff's assertion of jurisdiction. See Robinson v. Government of Malaysia, 269 F.3d 133, 140 (2d Cir. 2000); citing Phoenix Consulting, Inc. v. Republic of Angola, 342 U.S. App. D.C. 145, 216 F.3d 36, 40 (D.C. Cir. 2000). In determining whether subject matter jurisdiction exists, the court may consider relevant evidence before the court. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Most importantly, the plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Id.

## III. ARGUMENT

### A. THE PLAINTIFFS ARE EXEMPT FROM THE FLSA BECAUSE THEY ARE EMPLOYED BY A COMMON AIR CARRIER

The Plaintiffs' FLSA claims should be dismissed because the Plaintiffs are exempt from the overtime provisions of the FLSA since they are employees of a Common Air Carrier.

2

The FLSA overtime provisions do not apply to "any employee of a carrier by air subject to the provisions of title II of the Railway Labor Act." 29 U.S.C. § 213(b) (3) (2000). Title II of the RLA applies to "every common carrier by air engaged in interstate or foreign commerce...and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers." 45 U.S.C. § 181 (2000). Courts have looked to three elements for the exemption to apply: (1) the employer is a Common Air Carrier; (2) the employer is engaged in interstate or international air transportation; and (3) the employees' work is related to air transportation. Thibodeaux v. Executive Jet International, Inc., 328 F.3d 742 (5th Cir. 2003); Rocky Mountain Holdings, L.L.C., 26 NMB 132 (1999).

Based on the evidence before the Court, including PrivatAir internal documents and Federal Aviation Administration ("FAA") documents, PrivatAir is a Common Air Carrier engaged in interstate or foreign commerce, and the Plaintiffs are employees in its air transportation business. Therefore, the Plaintiffs are not covered by the overtime provisions of the FLSA and their Complaint should be dismissed for lack of subject matter jurisdiction.

### (1) PrivatAir is subject to the RLA because it holds itself out to the public as a Common Air Carrier

PrivatAir is subject to the RLA because it holds itself out to the public as a Common Air Carrier providing charter flights, corporate flights, and aircraft management services to the general public and operating under the FAA Air Carrier certificates within its corporate structure.

A common carrier is a business that indiscriminately offers transportation services to anyone interested in, and willing to pay for, such services. Valdivieso v. Atlas Air,

Inc., 305 F.3d 1283, 1285 (11th Cir. 2002), *cert. denied*, 155 L. Ed. 2d 1105 (2003). The Court in Valdivieso found that Atlas Air was a Common Air Carrier because its services were available to anyone who sought them. Id. Atlas Air sold air cargo services indiscriminately to commercial airlines and other businesses, subject to available resources.

It is irrelevant that a Common Air Carrier actually serves only a small segment of the general public as long as those services are still open to all who are interested. *See* Id., *citing* Terminal Taxicab Co. v. Kutz, 241 U.S. 252 (1916); Woolsey v. National Transportation Safety Board, 993 F.2d 516 (5th Cir. 1993); Las Vegas Hacienda, Inc. v. Civil Aeronautics Board, 298 F.2d 430 (9th Cir. 1962); Rocky Mountain Holdings, 26 NMB 132.

In Rocky Mountain Holdings, the National Mediation Board ("NMB"), who administers the dispute resolution process of the RLA, found that a medical airlift and charter service was subject to the RLA because, although its services were specialized, it holds itself out to the public. 26 NMB 132. Even though a small segment of the population needed Rocky Mountain's emergency airlift and air-ambulance services, the Court still found that the services were publicly available. Id.

Likewise, PrivatAir's charter and corporate shuttle services were indiscriminately available to the public during the employment of the Plaintiffs, albeit a small percentage of the public utilizes those services. The Plaintiffs cannot deny this fact because their own Complaint asserts that PrivatAir is an air carrier "providing aviation services including private travel charter services, corporate shuttle services, aircraft sales and management and ground services." *See* Complaint, ¶ 21 and Exhibit A, Defendants'

4

Requests for Admissions regarding the accuracy of the Complaint that Plaintiffs' never responded too and which are now deemed admitted. PrivatAir's air transportation services are provided to any member of the public willing to pay for those services. The Plaintiffs have admitted that PrivatAir provides these air transportation services and cannot dispute this fact.

PrivatAir is a Common Air Carrier because it advertises its services to the general public and did so during the employment of the Plaintiffs. A common carrier is one that advertises itself as willing to service any member of the public. Thibodeaux, 328 F.3d 742, *quoting* Woolsey, 993 F.2d at 524. In Thibodeaux, an airline that marketed its air transportation services on the internet, through direct mail, in business publications, and at public events was found to be a Common Air Carrier. Id.

Similarly, PrivatAir markets its air transportation services through a wide range of public media including the internet, direct mail, business publications, public events and the radio. *See* Advertising Material attached hereto as Exhibit B, internet home page (last visited April 20, 2004) http://www.privatair.com/home.html; Exhibit C, Corporate Shuttle pamphlet and Charter Fleet; Exhibit D, advertising and articles in *The Air Charter Guide, Business Jet Traveler, Wall Street Journal, Aircraft & Aerospace, A/C Flyer, Professional Pilot, Connecticut Post, The New York Times, Aviation & Business Journal, San Diego Aviation Biz Journal, Teterboro AV Journal, Star Ledger, Exec Controller 2003* ; Exhibit E, transcript of radio advertising; In addition, PrivatAir's total marketing and advertising budget during the years 2000-2003 was well above $100,000 for each year. *See* Confidential budget information attached hereto as Exhibit M. The evidence

5

before the Court clearly shows that PrivatAir is a Common Air Carrier because it markets its air transportation services to the general public.

### (2) PrivatAir is a Common Air Carrier because it operates under an FAA Air Carrier Certificate and Authorization

The Federal Aviation Administration ("FAA") recognized PrivatAir as a Common Air Carrier through its affiliate corporate entity, Ogden Flight Services Group, Inc., ("Ogden"), who held an air carrier certificate and operated under 14 CFR § 135 ("Part 135") during the years 2000-2003. *See* Exhibit F, FAA Affidavit of Max R. Schmitter including ¶ 7 ("FSG PrivatAir, Inc. operated in furtherance of and in support of the air carrier operations under the Part 119 air carrier certificate of Ogden Flight Services Group, Inc. under Part 135") *and* Exhibit G, Air Carrier Certificate of Ogden. In addition, Privatair's affiliate corporate entity, PrivatAir S.A., holds a foreign air carrier authorization pursuant to 14 C.F.R. § 129. *See* Exhibit H, PrivatAir S.A. foreign air carrier authorizations. Ogden is now known as Flight Services Group, Inc. ("FSG") and has a current air carrier certificate attached hereto as Exhibit G.

An air carrier is subject to the RLA if it holds a certificate authorizing it to operate as an air carrier. 49 U.S.C. § 42112(b) (3); *see* Roland v. United Airlines, Inc., 75 F.Supp. 25 (N.D. Ill. 1947) (noting an equivalent provision in the Civil Aeronautics Act, which has since been replaced by the Federal Aviation Act, and holding that the airline was a common carrier subject to the Railway Labor Act by force of law because it held such a certificate). PrivatAir, through Ogden and now FSG, holds such a certificate and operates as a Common Air Carrier pursuant to 14 C.F.R. § 135. *See* Exhibit G. In fact, the FAA recognized that Ogden does business under the corporate name of PrivatAir

6

within its corporate structure and lists the aircraft operated. *See* Exhibit I, Air-Operator Certificate Information, available online at the FAA Aviation Information Website, Air-Operator Certificate Information page (last visited April 15, 2004). Based on the foregoing, it is clear that PrivatAir operates under an FAA air carrier certificate and is a Common Air Carrier for purposes of the RLA.

PrivatAir also conducts operations through its related corporate entity, PrivatAir, S.A., under a foreign air carrier authorization pursuant to 14 C.F.R. § 129. *See* Exhibit H, PrivatAir S.A. foreign air carrier authorizations.

By virtue of the certificate and authorization, PrivatAir conducts Common Air Carrier operations. 14 C.F.R. § 119.5(d). Therefore, for as long as PrivatAir operates through the FAA air carrier certificate and authorization, it is subject to the RLA and exempt from the overtime provisions of the FLSA.

### 3)    PrivatAir is a Common Air Carrier because it operates as a single entity in providing services to the public

PrivatAir, within its corporate structure, operates as a single entity for purposes of providing Common Air Carrier services to the public. A copy of PrivatAir Group's Organization Chart during the Plaintiffs' employment is attached hereto as Exhibit J showing PrivatAir Holding S.A. as the parent corporate entity. The NMB, in construing the RLA, looks beyond corporate structure to determine whether separate entities are in fact operating as a single carrier. <u>Air Line Pilots Association v. Texas International Airlines, Inc.</u>, 656 F.2d 16 (2nd Cir. 1981) (citing a litany of NMB decisions that held multiple corporate entities were a single carrier under the RLA).

The NMB uses a two-part test to determine whether separate corporate entities are a single carrier under the RLA. The first part is based on the corporate entities' public image as a single carrier, including whether they share the same advertising, schedules, reservation lists, tickets, insignias, and customer service representatives. TWA/Ozark, 14 NMB 218 (1987). The second part is based on the corporate entities' operational management structure, including the existence of common management, common corporate officers, interlocking boards of directors, a combined workforce, and a combined personnel department. Id.

In a recent application of this two-part test, the NMB found that two airlines, each a separate corporation, were a single carrier under the Railway Labor Act because they held themselves out to the public as a single airline, operated flights as a single airline, used the same employee uniforms and insignia, and treated employees as though they worked for a single airline. Mountain Air Express, 26 NMB 185 (1999).

Similarly, PrivatAir operates as a single airline within its corporate structure under the RLA. They advertise under the name PrivatAir, share the same logo, have overlapping management structures, conduct flight operations as though they were a single company, and make no practical distinction between employees of one corporation or another. *See* Exhibits B-E (advertising material), Exhibit F (FAA affidavit referencing Defendants Miller and Connelly of PrivatAir as Ogden employees), Exhibit K (Operation agreements of PrivatAir and Ogden marked Confidential and entitled (1) Aircraft Sublease and Operation Agreement; (2) Aviation Personnel Services Agreement; (3) Flight Crew Services Agreement; (4) Part 135 Aircraft Maintenance Services Agreement; and (5) Flight Planning and Administrative Support Agreement) *and* Exhibit L, Section 2,

Subsection 4.3 (Ogden FAR Operations Manual referencing the Ogden/PrivatAir dual administrative structure). When separate corporate entities, like those in <u>Mountain Air Express</u> or the PrivatAir entities here, behave as a single carrier, they are treated as a single carrier for labor relations purposes under the RLA.

The RLA covers all separate entities that, in practice, operate as a single common carrier, so it is irrelevant that PrivatAir does not have an air carrier certificate in its own name. The three corporate entities relevant in the present case, PrivatAir S.A., PrivatAir, and Ogden now known as FSG, are actually treated as a single Common Air Carrier under the RLA because they operate as one entity. The close operating relationship between PrivatAir and Ogden is evidenced by the five (5) confidential Operation Agreements concerning the Common Air Carrier operations under Part 135 of FAA regulations. *See* Exhibit K marked confidential. Therefore, PrivatAir is exempt from the FLSA because it clearly operates as a single Common Air Carrier for purposes of the RLA.

      **(4)    PrivatAir operates as a Common Air Carrier because it provides Air Transportation Services in Interstate and Foreign Commerce**

PrivatAir conducts Common Air Carrier operations in interstate and foreign commerce because it operates flights throughout the United States and the world. PrivatAir is authorized to operate aircraft through the FAR operations manual. *See* Exhibit L, Ogden FAA Operations Specifications, S. 3, P. 51. In Paragraph 26 of their Complaint, the Plaintiffs admit that they were "engaged at all times in substantial activities related to interstate commerce…with the knowledge and intention on the part of Defendants that such activities would facilitate the operation of aircraft and aircraft

services across state lines." PrivatAir is obviously a Common Air Carrier engaged in interstate and international commerce and the Plaintiffs cannot argue otherwise.

      (5)    **The Plaintiffs are not covered by the FLSA because they work in furtherance of PrivatAir's Common Air Carrier Operations**

The Plaintiffs are not covered by the FLSA because they work in furtherance of PrivatAir's Common Air Carrier operations.

The RLA exempts air carrier employees from the FLSA if the employees' work is related to the carrier's air transportation activities. *See* Valdivieso, 305 F.3d 1283 (applying the air carrier exemption to loadmasters who managed air cargo); *and* Horkan v. Command Security Corp., 285 A.D.2d 529 (N.Y. App. 2001) (applying the air carrier exemption to airline security officers).

The Plaintiff employees in this case were directly involved in the Common Air Carrier operations of PrivatAir. As alleged in the Complaint, Caggianiello and Howard were employed as Flight Followers and Falco was employed as a Maintenance Manager/Maintenance Coordinator. Caggianiello and Howard directly managed PrivatAir's *flights*, while Falco directly maintained PrivatAir's *aircraft* as can be seen from the FAR 135 Operations Manual of Ogden Flight Services Group, Inc. *See* Exhibit L, S. 2, Subsection 4.3 (Organizational Chart), S. 6, Subsection 4.3.2 and S. 10, Subsection 4.3.2 (Trip Planning of Flight Followers) and S. 2, Subsection 5.2.23 (Maintenance Manager and Maintenance Coordinator).

In addition, the Plaintiffs admit in Paragraph 25 of the Complaint that they "were engaged in activities in the furtherance of PrivatAir's business of aircraft management and private air charter services." Like the loadmasters in Valdivieso or the security

10

officers in Horkan, the Plaintiffs are essential to PrivatAir's Common Air Carrier operations, so they are exempt from the FLSA overtime provisions.

The Plaintiffs are exempt from the FLSA because 100% of their duties are related to air transportation. To qualify for the air carrier exemption, at least eighty percent of the employees work must be related to air transportation. *See* Thibodeaux, 328 F.3d 742 *and* 29 C.F.R. § 786.1. The court held in Thibodeaux, absent a showing to the contrary, that a flight attendant employed by a common carrier is presumed to perform work that qualifies for the air carrier exemption. Id.

In the present case, Caggianiello and Howard are flight followers who manage flights in air transportation. Falco is a maintenance manager/coordinator who maintains the aircraft in air transportation. These jobs are completely related to PrivatAir's air transportation business because they involve direct supervision of flights and aircraft. Slavens v. Scenic Aviation, Inc., No. 99-4197, 2000 U.S. App. LEXIS 17412 (10th Cir. 2000). The Plaintiffs' job duties are clearly not remote, tenuous or negligible with respect to PrivatAir's transportation activities. Slavens at *8. Therefore, the Plaintiffs are not covered by the overtime provisions of the FLSA.

## IV.   CONCLUSION

Based on the foregoing, the Defendants respectfully request that the Court dismiss the Plaintiffs' Complaint pursuant to F.R.C.P 12 (b)(1) for lack of subject matter jurisdiction. The evidence before the Court clearly shows that PrivatAir is a Common Air Carrier and the Plaintiffs cannot show by a preponderance of the evidence that the Court has subject matter jurisdiction over the Plaintiffs' claims.

Respectfully Submitted,

THE DEFENDANTS

By: /s/ *signature*

Joseph C. Maya, Esq. ct/17742
Russell J. Sweeting, Esq. ct/24877
Maya & Associates, P. C.
266 Post Road East
Westport, CT 06880
Telephone: (203) 221-3100
Fax No:    (203) 221-3199

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed this 27th day of October 2005 to:

James T. Baldwin, Esq.
John Kaiser, Esq.
Coles, Baldwin & Craft, LLC
1261 Post Road, P.O. Box 577
Fairfield, CT 06824

_____
Russell J. Sweeting